JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Guzman Beltre appeals from his conviction for possession of drugs, arguing that the verdict was against the manifest weight of the evidence and that he was denied a fair trial when the court allowed the state to introduce evidence of his Dominican citizenship. We find no error in the proceedings below so we affirm.
 Factual and Procedural History {¶ 2} In a one-count indictment filed September 8, 2000, appellant was charged with possession of cocaine in an amount equal to or greater than 500 grams but less than 1000 grams. A trial commenced on March 20, 2001 resulted in a mistrial. A new trial was begun on June 4, 2001. The jury returned a verdict finding appellant guilty as charged. On August 27, 2002, the appellant was sentenced to a term of two years' imprisonment plus court costs; a $7500 fine was suspended.
 {¶ 3} At trial, the jury first heard the testimony of Patrolman Scott Huff of the Cleveland Police Department. Huff testified that he met with appellant in the course of investigating a shooting. Appellant spoke with Huff through appellant's girlfriend, Adria Guerra, who acted as an interpreter. Appellant told Huff that the victim had been shot during a struggle over a gun with an unidentified male who was attempting to rob them at appellant's home. Officer Huff, his partner, and their supervisor then went to appellant's apartment, where they observed blood going up the stairs, and found a casing in front of the door. Inside the apartment, Patrolman Huff observed more blood and a bullet hole. Patrolman Huff began searching for a weapon and found a brick of cocaine wrapped in black rubber on a couch. Police also found a spoon, baking soda, a rock of crack cocaine and powder on the floor. Laboratory analysis performed by scientific examiner Cynthia Lewis confirmed that the brick (which weighed 994 grams), the rock (which weighed .24 grams), and the spoon all contained cocaine.
 {¶ 4} Officer Antonio Colon of the Cleveland Police Department Canine Unit testified that he searched appellant's apartment with his dog, who had been trained to find crack cocaine, heroin, marijuana, hash, and methamphetamine. The dog alerted to the couch, a dresser near the couch, and a suitcase.
 {¶ 5} Lieutenant Robert Cerba was the supervisor in charge of the investigation of the shooting. He went with Patrolmen Huff and Kazimer to meet with appellant. Lieutenant Cerba testified that appellant gave the police permission to search his apartment. When they went to the apartment, Cerba observed blood on the landing and the walls outside the apartment. He found an empty shell casing and a spent round from a 9 millimeter copper-jacketed slug on the floor of the apartment. The apartment was in disarray, and there was blood on the bed and couch. Cerba identified photographs taken at the scene and evidence seized there, including appellant's Dominican passport, resident alien card, and driver's license.
 {¶ 6} Appellant's girlfriend, Adria Guerra, testified that appellant came to her apartment around 12:00 midnight. He appeared nervous, but was unable to speak. Two policemen then came to her apartment to speak with appellant. She acted as interpreter for appellant.
 {¶ 7} Appellant told her that the shooting victim, Tony Pellier, appeared at appellant's apartment door and said he wanted to speak to appellant about something important. Pellier asked appellant to go buy beer, and appellant went; Pellier's brother started to accompany appellant but went back up to appellant's apartment while appellant went to the store by himself. When appellant returned, there was a third man there. Shooting broke out; two or three minutes later, all three of the men ran away.
 {¶ 8} Ms. Guerra accompanied appellant and the police to appellant's apartment. She saw police handcuff appellant. She asked appellant what was going on. He told her the police had found something.
 {¶ 9} Appellant also testified in his own defense.
 Law and Analysis {¶ 10} Appellant first argues that his conviction was against the manifest weight of the evidence because he did not actually possess the drugs and the evidence that he constructively possessed them was minimal. Appellant points out that the evidence showed he was "at a different location for a significant period before the discovery of the drugs, and was not in proximity to them when they were found." In addition, several other people had been in the room where the cocaine was found.
 {¶ 11} In asking this court to reverse based upon the manifest weight of the evidence, appellant necessarily admits there wassufficient evidence to support his conviction. He asks the court to sit as a "thirteenth juror" and disagree with the jury's assessment of the evidence and resolution of conflicts in the testimony. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. This discretionary power to grant a new trial based upon the weight of the evidence "should be exercised only in the exceptional case in which the evidence weighs heavily against conviction." State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 12} R.C. 2925.01(K) provides that "`possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." However, "[w]hen drugs are found in a defendant's domicile, even when they are hidden, it may be inferred that the defendant was able to exercise dominion and control over the drugs when they are readily accessible to the defendant." State v. Hooks (Sept. 18, 2000), Warren App. No. CA2000-01-006. In this case, appellant testified that he lived alone. He was alone in the apartment before he left to go to his girlfriend's house. He said he locked the door before he left and took the only key to the apartment with him. There was no evidence of a forced entry when he returned with the police. The "brick" of cocaine was found on a couch when the police began to search the apartment for weapons. This evidence is enough to show that appellant exercised dominion and control over the cocaine. Cf. State v. Card, Stark App. No. 2001CA00283, 2002-Ohio-1288.
 {¶ 13} Although others had been in the apartment earlier that night, this fact alone does not weigh so heavily against a finding of guilt that we must find that appellant's conviction was against the manifest weight of the evidence. In closing arguments, appellant's counsel argued that the others brought the drugs to appellant's apartment and appellant was unaware of it. The jury clearly rejected this interpretation of the evidence. Therefore, we overrule the first assignment of error.
 {¶ 14} Second, appellant argues that he was denied a fair trial when the court allowed the state to introduce evidence of his citizenship. The state introduced into evidence appellant's passport and resident alien card among the items seized from his apartment. This evidence established that appellant resided in the apartment. Although appellant urges that this constituted evidence of his foreign citizenship and was intended to "vaguely suggest criminal involvement," we perceive no such inference. Therefore, we overrule the second assignment of error.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J. and ANTHONY O. CALABRESE, JR., J. concur.